IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SUSAN O.,[1]

        Plaintiff,

v.

Commissioner, Social
Security Administration,

        Defendant.

3:18-cv-02192-BR

OPINION AND ORDER

GEORGE J. WALL
CAITLIN S. LAUMAKER
Law Offices of George J. Wall
825 N.E. 20th Ave
Suite 330
Portland, OR 97232
(503) 236-0068

        Attorneys for Plaintiff

---

[1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 - OPINION AND ORDER

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1003

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**BENJAMIN J. GROEBNER**
Social Security Administration
Office of the General Counsel
701 Fifth Avenue
Suite 2900 M/S221A
Seattle, WA 98104-7075
(206) 615-2494

Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Susan O. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles XVI and II of the Social Security Act.

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

Plaintiff filed her applications for SSI and DIB on

December 24, 2015. Tr. 221.[2] Plaintiff alleged a disability onset date of January 31, 2010. Her applications were denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on December 6, 2017. Tr. 37-64. Plaintiff and a vocational expert (VE) at the hearing, and Plaintiff was represented by an attorney.

On February 7, 2018, the ALJ issued an opinion in which she found Plaintiff's relevant disability onset date is July 2, 2013; Plaintiff was not disabled at any time after July 2, 2013; and, Plaintiff, therefore, is not entitled to benefits. Tr. 15-30. Pursuant to 20 C.F.R. § 404.984(d) that decision became the final decision of the Commissioner on October 25, 2018, when the Appeals Council denied Plaintiff's request for review. Tr. 1-6. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on December 22, 1979. Tr. 221. Plaintiff was 37 years old at the time of the hearing. Plaintiff has a Masters Degree in Music Performance and an Associates Degree in Veterinary Science Technology. Tr. 44. Plaintiff has past relevant work experience as a veterinary technician. Tr. 28.

---

[2] Citations to the official transcript of record filed by the Commissioner on May 9, 2019, are referred to as "Tr."

Plaintiff alleges disability due to depression, anxiety, migraines, bipolar disorder, fatigue, and attention deficit disorder (ADD). Tr. 96-97.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 22-27.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42

U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

**DISABILITY ANALYSIS**

I.  **The Regulatory Sequential Evaluation**

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a

6 - OPINION AND ORDER

regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1),

416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her July 2, 2013, onset date. Tr. 18.

At Step Two the ALJ found Plaintiff has the severe impairments of right-shoulder disorder, right-biceps tendinitis, Raynaud's phenomenon, migraines, attention deficit hyperactivity disorder (ADHD), depression, bipolar disorder, and anxiety. Tr. 18. The ALJ found Plaintiff's hypothyroidism and history of asthma are not severe impairments. Tr. 18.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments or combination of impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 18. The ALJ found Plaintiff has the RFC to perform light work with the following limitations: frequent reaching, handling, and fingering bilaterally; only occasional interaction with coworkers and supervisors; never climbing ladders, ropes, or scaffolds; no exposure to hazards "greater than moderate level noise" or public contact; "simple, routine, repetitive tasks but not at production rate pace"; "simple work-related decisions"; and "few changes in a routine work setting." Tr. 20.

At Step Four the ALJ found Plaintiff is unable to perform her past work. Tr. 28.

At Step Five the ALJ found Plaintiff can perform other work that exists in the national economy. Accordingly, the ALJ concluded Plaintiff is not disabled. Tr. 30.

## DISCUSSION

Plaintiff contends the ALJ erred when she (1) partially rejected Plaintiff's testimony; (2) determined Plaintiff's impairments did not meet or equal Listing 12.04C; and (3) gave "little weight" to the opinions of treating psychologists Alex Bloom, Psy.D., and Karla Causeya, Psy.D.

### I. The ALJ did not err when she partially rejected Plaintiff's testimony.

Plaintiff alleges the ALJ erred when she partially rejected Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony: The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80

9 - OPINION AND ORDER

F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id.* The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester,* 81 F.3d at 834).

Plaintiff testified at the hearing that she "tr[ies] as hard as [she] can, . . . [but she does not] keep up. . . . [She] can make it work for a little while, but everything else goes out the window. And then, [her] work performance goes downhill too." Tr. 49. Plaintiff noted her main difficulty with work is "keeping up and maintaining . . . focus." Tr. 49. She noted she loses her ability to communicate as well as her "people skills" when she gets scared and/or when there are "so many things coming at [her] at once." Tr. 49. Plaintiff stated migraines are the "other big problem that [she is] getting medical treatment for." Tr. 50.

Plaintiff stated she wakes up between 8:30 and 9:00a.m., eats breakfast, and takes her medications. Even though she is "usually pretty groggy for a couple of hours," she then "start[s]

10- OPINION AND ORDER

to perk up a little bit and work[s] on house work or go[es] to appointments." Tr. 50. Plaintiff vacuums, does laundry, feeds her cats, and goes grocery shopping with a list provided by her husband. Plaintiff sews for fun, drives herself to appointments, and travels. Plaintiff noted she travels with her husband fairly often; specifically, they usually take "one big trip in the summer and maybe a big trip in the winter." Tr. 53. Plaintiff noted in the year before the hearing she and her husband traveled to Austria; San Jose, California; Boise, Idaho; Austin, Texas; and Hawaii. Plaintiff noted her husband does "most of the work for [travel, but] it's still kind of hard to get organized and then come back and try to get organized again." Tr. 54.

Plaintiff testified she usually has one or two migraine headaches per month, which cause her to "get pretty foggy" and to struggle to form sentences, answer questions, or communicate coherently. Tr. 57.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to produce some symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 21.

The ALJ noted Plaintiff's treatment records "document modest mental status examination findings." Tr. 23. *See, e.g.,*

11- OPINION AND ORDER

Tr. 396, 399, 498-99, 525-26, 598-99, 666-67, 676-77, 702-03, 728-29. In February 2016 Carole Paisley, treating nurse practitioner, noted Plaintiff

> always appears physically healthy, but presents as 'feeble,' reporting a host of physical sx's using a mix of vague and medical term descriptors, and the physical sxs are often grouped by system, *i.e.*, cardiac, neuro, etc. . . . From a medical standpoint, many of [Plaintiff's] reports either cannot be substantiated, aren't c/w objective findings, are so vague it halts the likelihood of diagnostic clarity, etc.

Tr. 487. In August 2016 N.P. Paisley noted it was "the best [she had] seen [Plaintiff]." Tr. 729. In December 2016 N.P. Paisley again noted it was "the best [she had] seen [Plaintiff] on exam." Tr. 703. In January 2017 Plaintiff reported to N.P. Paisley that she was "on a roll lately feeling more organized and productive." Tr. 659. In March 2017 Plaintiff reported she had been "quite productive." Tr. 681.

Similarly, in November 2014 Plaintiff reported to Henry Reahl, M.D., treating physician, that she "generally has one headache a month [and] often does not need to take a triptan." Tr. 432. In December 2015 Plaintiff reported averaging "about 15 days per month of migraine." Tr. 425. Plaintiff, however, also reported she had discontinued her medication in November 2015 and "currently not taking any migraine prophylaxis." Tr. 425. Plaintiff began taking Depakote for her migraines and reported decreased symptoms. Tr. 731. In March 2017 Plaintiff reported

12- OPINION AND ORDER

only low-grade daily headaches and her migraines decreased to once or twice a month. Tr. 648.

Finally, the ALJ noted Plaintiff's extensive travel. The record reflects in June 2014 Plaintiff traveled and in November 2015 she went to Hawaii. In addition, between May 2016 and July 2017 Plaintiff went camping and traveled to Washington, D.C.; Colorado; Sweden; Latvia; Austria; Hawaii; and twice to New York. Tr. 53, 503, 526, 591, 595, 661, 683, 687, 705, 723, 731, 1299, 1470. The ALJ noted although "[t]ravel and disability are not mutually exclusive, . . . the fact that [Plaintiff] has been able to withstand the physical and mental demands of travel, including international travel, is not entirely consistent with her allegations of debilitating symptoms and limitations." Tr. 25.

The Court finds on this record that the ALJ did not err when she partially rejected Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms during the relevant period.

II. **The ALJ did not err when she found at Step Three that Plaintiff's impairments do not meet or equal the criteria of Listing 12.04C.**

Plaintiff contends the ALJ erred when she found at Step Three that Plaintiff's impairments did not meet or equal the criteria of Listing 12.04C.

As noted, the ALJ must determine at Step Three whether any of a claimant's impairments or combination of impairments meet or

equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. §§ 404.1520(d), 416.920(d). To determine properly whether a claimant meets or equals a listing, the ALJ must consider all of the claimant's medically determinable impairments, including severe and nonsevere impairments. *See Lewis*, 236 F.3d at 512 ("An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.").

When determining whether a claimant with a mental impairment meets one of the listings, the ALJ must follow the evaluation technique set out in 20 C.F.R. § 404.1520a. Under this technique the ALJ must first consider whether the claimant has a medically documented history of the mental disorder (the "A criteria") and whether and to what extent the disorder functionally limits the claimant (the "B criteria" and the "C criteria"). *Id.* § 404.1520a(b)-(c). "To meet or equal listing 12.04 . . . a claimant must satisfy either the A and B criteria, or the A and C criteria." *Bradley v. Comm'r of Soc. Sec. Admin.*, No. CV-18-00611-TUC-MSA, 2019 WL 6167879, at *4 (D. Ariz. Nov. 20, 2019) (citing 20 C.F.R. Part 404, Subpart P, App. 1, § 12.04).

To satisfy the criteria of Listing 12.04C a claimant must establish she has a mental disorder that is "serious and

persistent," which is defined as:

> [having] a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> > 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and
> >
> > 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04C. Marginal adjustment is further defined as:

> your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00G(2)(c).

The ALJ found the record did not establish that Plaintiff has only a minimal capacity to adapt to changes in her

15- OPINION AND ORDER

environment or to demands that are not already part of her daily life. As noted, Plaintiff's mental-status examinations did not reveal significant symptoms. Tr. 396, 399, 498-99, 525-26, 598-99, 666-67, 676-77, 702-03, 728-29. In addition, the record reflects Plaintiff planned her wedding, left her house regularly for appointments and to shop in addition to traveling extensively. Tr. 51, 53, 307-08, 336, 503, 526, 595, 591, 661, 683, 687, 705, 723, 731, 1299, 1470.

On this record the Court concludes the ALJ did not err when she found Plaintiff's impairments did not meet or equal the criteria of Listing 12.04C.

### III. The ALJ did not err when she gave "little weight" to the opinions of Drs. Bloom and Causeya, treating psychologists.

As noted, Plaintiff contends the ALJ erred when she gave little weight to the opinions of Drs. Bloom and Causeya.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas,* 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

16- OPINION AND ORDER

### A. Dr. Bloom

On November 2, 2017, Dr. Bloom provided a statement regarding Plaintiff's impairments. Dr. Bloom notes he has treated Plaintiff "intermittently" since 2015. Tr. 1488. Dr. Bloom states he has discussed with Plaintiff "her employment history and how she has had trouble maintaining regular employment." Tr. 1488. Dr. Bloom states Plaintiff reported she has a history of tardiness and that her depression has "historically impacted work performance and maintaining organization." Tr. 1488. Plaintiff advised Dr. Bloom that she is able to accomplish short-term goals at the beginning of employment, but "her work performance along with interpersonal skills deteriorate over time, leading to a sustained feeling of overwhelm, defensiveness, and frustration [and] her ability to accomplish tasks outside of work becomes minimal." Tr. 1488. Dr. Bloom states he also discussed Plaintiff's physical symptoms with Plaintiff. Plaintiff reported "recurrent migraines last 72 hours on average, but can go for as long as several months. . . . Often, before the migraine commences or after it lifts, she experiences an even greater amount of grogginess and fatigue, which can remain for several days." Tr. 1488. Dr. Bloom noted Plaintiff's progress with her ADHD symptoms, sustaining attention, and accomplishing tasks has been "variable." Tr. 1488. Dr. Bloom concludes:

17- OPINION AND ORDER

> It is outside of the scope for me to assess
> [Plaintiff] for whether she is able to work as
> this was and continues to not be the focus of our
> assessment or treatment. That said, I would find
> it challenging to justify her ability to complete
> daily work tasks on a regular basis given her
> level of struggle in accomplishing daily and
> weekly tasks around her home.

Tr. 1489.

As noted, the ALJ gave little weight to Dr. Bloom's opinion on the grounds that Dr. Bloom appeared merely to reiterate Plaintiff's subjective reports about her mental and physical limitations, which this Court has already concluded the ALJ properly rejected. In addition, the ALJ noted Dr. Bloom's opinion is inconsistent with the medical record. Specifically, Dr. Bloom's own records contain unremarkable mental-status examination findings. *See, e.g.,* Tr. 581-615, 654-734. The ALJ also found Dr. Bloom's opinion was inconsistent with Plaintiff's activities, including her extensive travel.

On this record the Court concludes the ALJ did not err when she gave little weight to Dr. Bloom's opinion because the ALJ did so based on clear and convincing evidence in the record.

**B. Dr. Causeya**

On June 21, 2013, Dr. Causeya conducted a psycho-diagnostic evaluation of Plaintiff and completed a Mental Residual Functional Capacity Statement (MRFC). Dr. Causeya found in her MRFC that Plaintiff had moderately severe difficulty in her ability to work in coordination with or in proximity to

18- OPINION AND ORDER

others without being distracted; to make simple work-related decisions; to complete a normal workday and work week without interruptions from psychologically-based symptoms; to perform at a consistent pace without an unreasonable number of rests; to interact appropriately with the general public or customers; and to maintain "socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." Tr. 1499-1500. Dr. Causeya also concluded Plaintiff would likely miss more than one or two days of work per month due to her symptoms. Tr. 1500.

The ALJ gave little weight to Dr. Causeya's opinion "regarding [Plaintiff's] functioning during the relevant period" because it was inconsistent with the record after July 2013. Specifically, Plaintiff had largely unremarkable mental-status examinations after her July 2013 onset date. Tr. 396, 399, 498-99, 525-26, 598-99, 666-67, 676-77, 702-03, 728-29. In addition, the ALJ noted Plaintiff's "robust activities" after her July 2013 onset date, which included extensive travel in 2015-2017 and part-time work sewing pillow covers that ended only because orders tapered off. Tr. 53, 258, 503, 526, 595, 591, 661, 683, 687, 705, 723, 731, 1299, 1470.

On this record the Court concludes the ALJ did not err when she gave little weight to Dr. Causeya's opinion because the ALJ did so based on clear and convincing evidence in the record.

19- OPINION AND ORDER

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 3rd day of December, 2019.

_____
ANNA J. BROWN
United States Senior District Judge

20- OPINION AND ORDER